Good morning, your honors. My name is Frank Holloman and I'm here for the appellants. This case presents a historic spill of at least 369,000 gallons of diesel fuel and gasoline into a tributary of the Santa River from a defined buried pipeline that virtually immediately began adding gasoline and petroleum pollutants to the waterway and which continues to add those pollutants to the waterway today. If the district court's ruling were allowed to stand and be adopted by this court and if the position of the pipeline companies were adopted by this court, it would blow a tremendous hole into the protections of the Clean Water Act because their position is as long as the point source is buried, as this gas pipeline is and was, or as long as a polluter pulls its pipe a few feet back from the waterway so that the pollutants are added to the waterway by passage over or under earth, through earth, or along with groundwater, then the Clean Water Act does not apply and the nation's waters are not protected from that kind of pollution. Your honors, we believe that position is directly contrary to the language of the statute, the congressional purposes, the overwhelming weight of authority in this country and the long history of application and interpretation by the EPA. Of course, the basic legal premise, the basic legal foundation we operate on is the actual statutory language and actually the district court and the pipeline companies' basic argument is with the language Congress chose. What Congress outlawed is the unpermitted discharge of a pollutant from a point source. What is a discharge of a pollutant? And this is the exact language that Congress chose. Any addition of any pollutant to navigable waters. It does not say directly to, as courts have pointed out and as the EPA has pointed out, it says to. That is exactly what happened in this case. Because of this flow of thousands of gallons of petroleum products, only a thousand feet uphill from this tributary, pollutants were added, are being added to the waters of the United States. That really is, if we begin our reply brief in this case, that really is the beginning and end of the case. What is a direct hydrological connection? How do we need to define that in order for you to prevail? Your Honor, in this case, this is such a clear and powerful case. This is a rural tributary. There is no dispute that gasoline is a source of the petroleum pollution of this creek. Only a thousand feet away, and there is no dispute, began adding petroleum pollutants, including benzene, immediately. So in this case, you have the strongest possible case. It does not require the court to reach out and decide some fringe case. Well, no, I agree with you. This is, I mean, hundreds of thousands of gallons of gasoline is certainly a substantial addition. But to what extent do we need to define the hydrological connection? Because you're using that in your brief. You're using the term groundwater in your brief without any definition of those. And so I'm interested in what is your understanding of those terms, and to what extent do we need to specify in our analysis what those terms would mean, either in favor of you or in favor of the applicant? Yes, Your Honor. We believe, again, the starting point is the statutory language. And a direct hydrological connection means proof that shows any pollutant is being added to navigable waters from the point source. So you're saying if it gets from point A to point C through a water-based transfer, you've met the burden. Yes, ma'am. Yes, Your Honor. That it is, therefore, traceable and, therefore, fits within the actual language of the statute. And here, of course, we have a massive flow of petroleum only 1,000 feet uphill of this tributary, which is undisputed, immediately, virtually immediately added and continues to add petroleum pollutants. It's also important, though, to look at the congressional intent. And this is beyond the legislative history. This is the stated purpose of the Clean Water Act in the act itself, to restore and protect the integrity of the nation's waters and to stop the addition of pollutants to the nation's waters. Well, if a polluter or a discharger could simply back up from the water's edge or simply bury the pipe, as was done here, and it was done in a sense in the Hawaii case that's been before the Ninth Circuit, a discharge into the ground short of the Pacific Ocean, then these congressional purposes will be thwarted and will be subject simply to the locational choices of polluters to get around the protection of the nation's waters. The position we're taking here is also supported by the overwhelming weight of authority. Sometimes we say weight of authority, and I believe it's almost the tonnage of authority in this case. We have listed in the footnote case after case in jurisdictions across the country, including four of the six district judges in this circuit who have directly considered the issue. Well, then, for your point, tell us how the judicial court go off the rails, because there certainly is a lot of authority to the contrary. Yes, I think the district court, I'll say what the district court said in its opinion, and that is I think the district court was misanalyzed and misread Justice Scalia's plurality opinion in the Rapanos case. But the district court, wasn't it focusing on the fact he's calling it a past discharge? Oh, on that point, Your Honor, that's a somewhat different point, and that is not whether the Clean Water Act itself has been violated, but whether the discharge has stopped. And the district judge said as the pipeline contends we fixed the pipe, therefore we're no longer violating the act. Right, but I'm referring to page 11 where he says the plaintiffs have identified, that is of his opinion, the plaintiffs have identified a discrete source for the pollution but have failed to allege a discrete conveyance of the pollution into navigable waters. And it seems to me that that was a very central part of the district court's analysis. Well, I think there were several bases of his decision, but I think that is both not a fair characterization of the complaint, this was decided in a motion to dismiss, nor is it a correct statement of the law. We directly alleged, and there's no question about this, that the spill of this gasoline and the pollutants flowed over and through the earth and along with the groundwater to the tributary of the Savannah River. So we definitely alleged, and we can prove, I have no doubt, that that is how the pollutant was added to, as the act says, the water of the United States. Now to the extent the judge concluded that you must have a pipe that literally carries the pollutant to the water's edge, that simply is not in the Clean Water Act. And it has been roundly rejected over and over again by courts throughout the country. One district court even called it a frivolous argument. And four of six district judges in this circuit have rejected it. The district court seemed to say that it's not enough that the groundwater is connected to the navigable water. That's correct. That was his position. Right. But that is wrong. We believe that is incorrect. It's incorrect because the statute itself does not lend itself to that interpretation. It does not say that. It says any addition of any pollutant to the water of the United States. The fact it flowed with groundwater only some 1,000 feet does not make it any less an addition of pollutants. And I would also like to point out to the court that the Environmental Protection Agency, since the administration of Presidents Ford and Carter, through presidents of both political parties, in enforcement actions against pipeline companies, in regulation, in amicus briefs filed with the Court of Appeals, and in response to public comments, has consistently taken this same position. That's our decision in Goldfarb. And your decision in Goldfarb makes clear fixing the pipe does not stop the violation because the violation was not the breaking of the pipe. It is the addition of the pollutant. And as this court said in Goldfarb, the act that led to the violation may be in the past, but if the violation is continuing, it is a continuing violation that the citizens can't enforce against. And we believe, as to the issue of continuing violation, that is a controlling precedent of the court. Fixing the pipe, breaking the pipe, was not the violation. It was the addition of the gasoline pollutants to the river. And the pollutant being in the groundwater was not a violation either? No, just being in the groundwater. And in fact, our Clean Water Act claim would not require treatment of the groundwater, it requires stopping the flow of the pollutant, by any means, into the waterway. So we're not attempting to say the groundwater, as the judge said in the Yadkin case. Groundwater is not the water of the United States. That's how some courts have gotten confused. It is the way through which the pollutants pollute a surface water. And that is the violation of the Clean Water Act, which has yet to be remedied to this very day. It is still being polluted. District Court felt that the only conduit had to be the pipe itself. Yes, and if that's true, we can say goodbye to many of the protections of the Clean Water Act, because the polluters can simply move their pollution back. And we will have written into the Clean Water Act something Congress did not write, and that is an exemption for buried petroleum pipelines. And their spills into waters of the United States. And also we will be writing in a change of the word any. Yes, and the word to. And to, any and to. Your Honor, there are also claims of parades of horribles that will happen at the court. It says that this historic spill violates the Clean Water Act. And as we have laid out in our brief, we are simply arguing for the precedence of many courts throughout the country and the EPA that has been a consistent interpretation for some 40 years. We're not suggesting any drastic change of law. We want to ensure that the Clean Water Act retains its protections for our region's waters. And if they are to prevail, our nation's waters will be at tremendous risk. I've reserved five minutes for a rebuttal, but I'd be glad to answer questions. Now, as to the fluid source, if a defendant affirmatively collects feederage from channels that flow at runoff, it is no longer absorbed and dissipates in a natural and impeded manner. Is that the fluid source? I'm not quite sure I heard you, Your Honor. I'm sorry. I'm sorry. One of the caveats, recognized caveats, is that the runoff will continue constituting a fluid source if a defendant affirmatively collects feederage from channels that flow at the wrong runoff such that it no longer runs off and dissipates in a natural and impeded manner. Yes, that would be a point source, too. And here we have really an undisputed point source, a pipe, which is in the definition of point source, a pipe. And this pipe broke and it discharged at least 369,000 gallons of gasoline. But in that situation which you described, that also would be a point source. And as we have pointed out at this site, it's almost like an industrial site now. And there's reports of large seeps of gasoline materials flowing at the site. But the pipe itself, under the statute, Congress said pipes are point sources. And it did not require that they discharge directly on or in the river. And I believe my time is up until rebuttal. Thank you. Thank you, Counsel. Mr. Coogan. Thank you, Your Honor. I'm Jim Cooney of the Bar of North Carolina and I represent the defendant appellees. I want to address the issue of the Clean Water Act violation and particularly Judge Keenan's question of a direct hydrological connection. But before we get there, there was enough ground for this opinion that would obviate the need to address any of those issues. And Mr. Holloman actually gave you the basis to find and affirm that ground in his last statement because what he said is the pipeline discharge. It is a past violation. To violate the Clean Water Act, a point source must be discharging. There has to be an active violation. And when we take a look at Goldfarb, Judge Keenan, we see what that means. Because understanding Goldfarb, first of all, that was a RCRA case. That was not a Clean Water Act case. And under RCRA, merely possessing a hazardous waste material is itself a violation of the Act. You don't have to discharge it. You don't have to put it anyplace. The mere possession of it violates the Act. So there was an ongoing violation because they were possessing it. But when you take a step back, what you realize is that there were intermittent discharges going on in Goldfarb. I thought in Goldfarb we said that the relevant language was the same that we had to compare. Right, but when you take a look at the elements is what I'm focusing on. Well, there certainly needs to be a continuing violation under both RCRA and the Clean Water Act. The violation in RCRA is possessing hazardous waste without a permit. The violation in the Clean Water Act is discharging from a point source into a water in the United States. It's an active verb. You have to be discharging. And three other circuits have agreed with that. The Fifth Circuit in Hamcourt dealt with a pipeline leak that was exactly the same as this. 2,400 barrels, roughly 150,000 gallons of gasoline. And the Hamcourt court said a discrete discharge that is no longer discharging is not a continuing violation such that you can file a citizen suit. Now, that doesn't mean EPA can't come in and enforce it. The government has the right to come in and level fines and do all sorts of enforcement for past violations. Okay, but Mr. Cooney, let me take issue with your language. I thought the language of the Clean Water Act was discharge of a pollutant. It isn't discharging, as you allege, is it? It's discharge of a pollutant from a point source. Right, right. And at the time this lawsuit was filed, that point source hadn't discharged anything for two years. Right, but it's not discharging, as you just told us. But to be in violation, don't you have to? You want to make sure that you confine your argument to what the language of the statute actually is. Yeah, and I didn't mean to imply that the statute said discharging, and I apologize. That's what I heard you say. Maybe I'm incorrect. What I meant to imply is that to have a continuing violation, as opposed to certainly a past violation can be a discharge in the past, and EPA can enforce that. But to have a continuing violation, which is required under Gwaldney in 1365, you have to be continuing to discharge. And when you look at, I think the best case on that, is the Sierra Club against El Paso gold mines out of the Tenth Circuit. And I recommend that to the court, because in that case you had a gold mine, which is a point source. Water would come into the gold mine. It would wash pollutants down to something called the Roosevelt Tunnel, which was used to lower the groundwater table, and then it would flow into a river. The court said because there were intermittent discharges from that point source, it was a continuing violation. But it went on to say it would be totally different if it was a single discharge in the past, and the pollutants were moving towards the Roosevelt Tunnel by way of migration or diffusion or simple gravity, as is happening here. Certainly both counsel know these cases better than I do, but I thought Gwaldney is contrary to that position and the general position you're espousing. Gwaldney dealt with the past discharge. Isn't that correct? That's correct. So essentially we've got cases on both sides of this, and it seems to me that rather than you single out your case, counsel single out their case, you're going to have to make a compelling argument on the rationale, the language of the statute and the rationale, rather than just say this case helps me. Okay, here's the rationale, Judge. The legal basis for a citizen suit is that we are discharging without a permit. So their theory of the case is my client needs a nippity's permit for discharging from the pipeline, but the pipeline's not discharging anything. I can't apply for a permit at this point for the pipeline because it's not discharging anything, and that's the only point source. The Clean Water Act is a permitting statute. How am I supposed to get a permit to discharge something from a point source that's not discharging anything? And the courts have drawn a distinct line between a single release in the past and a point source like a fill or a gold mine or a basin of some kind where you collect the water and it's intermittently discharging. That is an ongoing violation. A single discharge in the past is not an ongoing violation. It is a wholly past violation. It doesn't mean it's not a violation. Okay, I'm sorry. I need to cut you off, but what about the fact that close to 200,000 gallons of this gasoline has not been recovered? Does that play into your analysis at all? It's being recovered as we speak. Right, but it hasn't been accomplished yet. That's correct. How does that affect your analysis, if at all? Well, first of all, it hasn't reached a navigable water or water of the United States at this point, the 200,000 gallons. I'm just wondering, is the discharge continuing in the sense that you have thousands and thousands of unrecovered gallons of gasoline proceeding toward navigable waters if they're not recovered? It's not continuing because the point source is not discharging anything anymore. The point source discharged something in the past. There's now migration going on. The point source, and the only point source is the pipeline, that point source hasn't discharged anything in three years. It would be different if it was a basin that was intermittently leaking, and so you've got a continuing violation where there was a likelihood that it was going to discharge again in the future. How fast does it have to reach navigable waters under your analysis? You're saying it can't take a slow path to the navigable waters. It has to take the fast path? How do we ever possibly define that? Well, I don't think you need to answer that question. I think you need to look at what is the point source doing. Is the point source discharging or not? If the point source is not discharging, then it's in the past. You don't need to decide whether it takes a day, a week, a month, or a year to get someplace. All you need to do is look at, because, again, the language of the statute is it has to be a discharge from a point source, not a discharge related to a point source in the past, but there has to be an active violation of a discharge from a point source, and this point source hasn't leaked anything in three years. Where does the statute say active violation? That's the Gwaltney standard. In order to maintain a citizen's lawsuit, there must be a continuing violation, and that's what we're talking about here. There may be a Clean Water Act violation. I'll get to that in a second, but it occurred in the past, so it's up to EPA and the federal government, and, of course, the state government, who has primary jurisdiction of the groundwater, to come in and exercise their regulatory authority. Congress intentionally limited the right of citizens groups to supplant states and other regulators to only violations that were continuing, and continuing, at least the way I read Gwaltney, means inactive. It's got to be going on. Now, I'm sorry, Judge. No, no. I'm just thinking about Gwaltney's language where it talks about citizen suits permitting citizens to evade pollution. It seems a little more general than you're suggesting, but, again, I'll just have to go back and take a look at the language. I don't believe so, because if you recall, Gwaltney actually came up from this court, and this court had essentially adopted your construction, that it did not need to be wholly, that it really didn't make any difference. If there was a violation, there was a violation. It didn't make any difference whether the violation occurred in the past or was continuing, and the Gwaltney court actually adopted the Hamker decision to say, no, if it's wholly in the past, if the discharge from the point source has occurred and is now stopped, then there is no continuing violation. And when it came back to this court on remand, this court also adopted the additional standard that if there's a strong likelihood that it's going to reoccur or if it's intermittent, that would also be a continuing violation. And I submit to you that issue, the great weight of authority is on our side based on the Tenth, the Second, and the Fifth Circuit. This is not as fractured as a direct hydrologic connection. And so our argument is very simple. If the point source is no longer discharging or capable of discharging or likely to discharge or intermittently discharging, then what happened two years before the suit was filed in a single episode is not a continuing violation. Counsel, we have a point source, right? Yes, Your Honor. Yes, I dispute. And do you dispute that right now that the pollute is going into Navajo water? In that terms, I'm not asking you whether or not the point source acted. Do you agree that I disputed that the pollutant is going now into Navajo water? The complaint alleges that and that's entitled. Okay, it's entitled at this point to be true, right? Yes, Your Honor. All right. So we have point source and we have, as alleged, active polluting, which is an addition of a pollutant to a Navajo water. So what's left is the front. I believe the discharge is left. Well, a discharge from that point. Do you agree there was a discharge from that point source? In the past. In the past, right. But it was a discharge. Yes, Your Honor. But the from has nothing to do with a temporal, active, past, or present. It's just from. For a violation of the Clean Water Act. Right. Now, under Gwaltney, Gwaltney laid it on top to say it's got to be a continuing violation. Right. Your Honor's analysis is exactly right if we're talking about a past violation. And that's why they can't bring this lawsuit because it's wholly past EPA. I'm not sure Gwaltney is as limited as you say because we talk about the Supreme Court talks about a citizen sued may be brought only for violation of a permanent limitation which is in effect under the act. Well, the permanent limitation is still in effect. Correct? But there's no discharge. So there's no way you can get a permit for that point source. But the Supreme Court wasn't making a turn, it seems to me, on the discharge. But whether there is actually a violation of a permanent limitation. Correct.  permit. All right. That's got to be a continuing violation according to the Supreme Court. The pipeline is not discharging anything. I completely understand what you're saying. Actually, what I'm just saying is Gwaltney talking about a continuing permit violation. In other words, not a continuing discharge. But there is still a violation. You're saying there can't be a distinction between the two. Is that correct? Right. Because there's no permit violation here because you don't need a permit for something that's not discharging. It would be no different. Let's imagine an oil tanker truck with 10,000 gallons of gasoline gets into an accident on the highway, spills the petroleum product into land off the highway and into the ground water. And then 30 days later or 60 days later or a year later, you find petroleum product in there. Are we going to say that a citizen suit is appropriate against the trucking company because they have to apply for a permit for that discharge? The fact of the matter is there are other regulatory schemes to cover that, RCRA being the surrounding. RCRA was intended to cover things on land. So if I set an industrial waste site 20 feet from the water and I dump a bunch of stuff in the land, if it's industrial waste, I violated RCRA and CERCLA may apply. You don't even need to stretch the Clean Water Act out to find that there's been a violation. There are other regulatory schemes in place. Congress regulated the land with RCRA and regulated the waters with the Clean Water Act. Now, Judge Keenan, I promised at the beginning of my argument I was going to get to the issue of the direct hydrological connection in your question about the standards. Well, it's just in reading these cases, the term seems to be used. But I guess the EPA tried to define it in its amicus brief submitted to the Ninth Circuit. Isn't that correct? That is. But other than the EPA definition, I didn't really see the courts grappling with the definition of what is a direct hydrological connection. And I just don't know whether it's necessary to decide this case, either for or against your position. But I'm just curious. With one exception. It's begging for a definition. There is a court that grappled with that. There is a court that has grappled with that and has defined it. And if you read the county of Maui district court case, which is on appeal of the Ninth Circuit, the district court formulated a test for direct hydrological connection, a test that they don't meet on the pleadings. Because in that case, if you recall, they injected a dye where the sewage was going. And 84 days later it showed up in the ocean. And the ocean, of course, is a navigable, in fact, water. And so what the district court said, after a lengthy analysis of the Ninth Circuit and Ravanos, is that to be direct, you have to have traceable to navigable, in fact, waters. Not just wetlands. Not just tributaries. But a navigable, in fact, water. And it has to have more than a de minimis impact. And in the county of Maui case, they were showing coral bleaching and some damage to sea life in order to make out more than a de minimis impact. In this case, the unnamed tributary of Brown's Creek is not a navigable, in fact, water. The Savannah River is a navigable, in fact, water. There's no allegation whatsoever that any petroleum byproduct has made its way to a navigable, in fact, water. And there's certainly no evidence that it has more than a de minimis impact. Those are the standards that the district court used in county of Maui. They don't meet those standards. So even if you wanted to go to a direct hydrological connection, and we think there are good reasons not to, and I'll get to those in a second, they do not meet that standard that the court proposed in county of Maui on which they've been relying. Now, we think there's a strong argument that you shouldn't go there because the congressional intent was clear in the Clean Water Act that Congress did not intend to exercise jurisdiction or regulation over the groundwater. There were amendments offered. How do you define groundwater? Groundwater is, at least in this part of the country, is simply moisture passing in a porous fashion between the rock and the soil through gravity. This isn't an underground river Styx under Belton, South Carolina. We've got just bits of moisture congealing, coagulating, moving with gravity. So groundwater is not free-flowing water. It's not surface water. It's just simply the moisture below the surface that gravity pulls together as it makes its way to rivers and streams. And all groundwater is hydrologically connected to rivers and streams. That's why saying it's a direct connection is an infinitely elastic standard. What you need to do is flesh that out if you're going to go there. But the Congress in 1972 rejected any claim of jurisdiction over the groundwaters. They have always been given the primary jurisdiction for groundwaters to the states. And if you read Exxon Corporation against Trane, its decision out of the Fifth Circuit in 1977, there's an extensive discussion of the legislative history, the hearings, the committee hearings, the amendment by Representative Aspin to try to get groundwater within the Clean Water Act that was rejected. Yeah, but we're not really concerned with whether there's a discharge. Are we at this point into groundwater? It has to be a discharge into navigable water. But groundwater is providing the jurisdictional nexus. It's a conduit to the navigable water. And it's a jurisdictional nexus. And I guess the EPA is saying in its brief filed with the Ninth Circuit, it talks about gluten has to proceed to the surface water without significant interruption as indicated by time, distance, and traceability. Well, and remember, that's a different standard than the district court because the district court said it has to proceed to a navigable, in fact, water, not just to another water. So the EPA is not even doing the district court. And whatever determination the EPA is arguing for, and that brief was filed before the election. And I think, you know, what the EPA's position is now, I don't know. But it's never been part of a rulemaking. It's entitled to no deference. Oh, no, I realize. I'm just saying they know something about the subject. Well, they've been trying to exercise. They waited 20 years before they claimed any jurisdiction over groundwater. The first statement didn't come out until 1991 after the Clean Water Act was passed in 1972. They have never promulgated a rulemaking on it, which I think is significant because if they really felt like they had jurisdiction over those groundwaters, they could have promulgated a ruling on it. But it's important to note that the EPA standard is different than the district court standard because groundwater is different. It's always connected. And the EPA is just restating things that, again, have no definition to them. I mean, what does it mean relatively uninterrupted? Does 50% need to get there? Is it 75%? Is it 10%? Is it a molecule? And how direct does it have to be? Is 30 days long enough? Does it have to be two days? Does it have to be three days? And that's what the district court struggled with in County of Maui. And they don't meet that test in County of Maui. So we would urge the court to find that this violation is wholly passed if there's a violation and not struggle with the difficulty of that. But if you get to it, the County of Maui test means they have no claim. And I apologize for running over. Thank you, Counsel. Mr. Solomon. Yes, sir, Your Honor. A few quick points. First of all, my friend Mr. Cooney's argument is really with this court and with the language of the Clean Water Act. This court decided Gold Farm after Gwaltney. This is this court's latest interpretation of Gwaltney. And in that decision, in interpreting the identical language in the Clean Water Act, this court said we agree that the to be in violation of language does not necessarily require that a defendant be currently engaged in the activity causing the continuous violation. In other words, although a defendant's conduct that is causing a violation may have ceased, what is relevant is that the violation is continuing. Then Mr. Cooney has responded, well, that statute is different. You're saying the language is the same. In fact, the court acknowledged it was the same. Yes, Your Honor. It was taken from the Clean Water Act. And how does the Clean Water Act define a violation? It defines a violation not, as Mr. Cooney said, a flow from a pipe. It defines a discharge to mean any addition of any pollutant to navigable waters. That is waters of the U.S. So the collection site would that be a point source? Yes, sir, it would. Yes, Your Honor. And how do they get a permit for that? Or could they get a permit for that? Well, Your Honor, let me emphasize this for a moment. The Clean Water Act is not a permitting statute per se. That's not the purpose of it. The purpose of it is a discharge elimination. You violate the Clean Water Act if you discharge without a permit. And the courts have said you violate the Clean Water Act even if there's no permitting system available to you. We cited those string of cases. I am unaware of any permit that you can get to discharge raw gasoline and diesel fuel into water of the United States. You can get permits to do wastewater treatment activities, but you can't get a permit that I'm aware of to discharge raw gasoline and diesel fuel into the water of the United States. I would also point out that when Mr. Cooney argues for navigable in fact, that is not the wording of the Clean Water Act. It is navigable waters, not navigable in fact. And there is no dispute. We allege in our complaint, and I don't think there can be any dispute, that this tributary of the Savannah River is indeed a water of the United States under any conceivable test. Waltney, Your Honor, as you pointed out, that was a situation where the polluter was violating a permit by exceeding its limits. By the time the plaintiff brought suit, it was no longer exceeding its limits. It was no longer adding the pollutant to the waterway. Here, the pollutant is being added to the waterway, and that was a distinction this court was making in Goldfarb when it issued its decision interpreting what Waltney means. I would like to point out, there is no dispute here. We have stronger, much stronger evidence than in the Hawaii case. We don't need trace or die here. We had 369,000 gallons of gasoline and diesel fuel discharged up at 1,000 feet, emitted 1,000 feet uphill from a tributary in rural Anderson County where there are no gasoline stations or other source of gasoline, and it is undisputed that those pollutants, which immediately, virtually immediately, the first time they tested the stream, it was polluted. It's still polluted today, and it is not de minimis. It has been above clean water standards, water quality standards, which is not necessary to establish a clean water violation, but here it has been, and these materials are materials like benzene, naphthalene, and other petroleum pollutants you do not want in your waterways. As to RCRA, I would point out the RCRA statute expressly says it is to be interpreted consistent with and in conjunction with the Clean Water Act, and RCRA and the Clean Water Act recognize they exist together, and what the Clean Water Act does, which RCRA does not do, is it protects the navigable waters of the U.S. from addition of pollutants as is happening here. And thank you, Johannes, for your patience and attention. Thank you. Could I ask you just one question? Was there any disagreement in the trial court as to whether these bodies of water were navigable? That issue has not been raised. We allege it was a water of the U.S. Navigable is... It would be a matter of proof. Yes, your Honor. They have not disputed that. Remember, this was decided on a motion to dismiss. They have not answered. But their briefing never contested this was a water of the U.S., and I can't imagine that there would be any. This is not an intermittent stream. It's flowing all the time right there. Thank you, Johannes. Thank you, counsel. We'll ask the clerk to dismiss court, sign it down, and we'll turn it back to you, counsel. Thank you. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Roger L. Gregory, Barbara Milano Keenan, Henry F. Floyd